CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
September 29, 2025
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| GARY WALL, | ) |
| Plaintiff, | ) Case No. 7:23-cv-00331 |
| v. | ) **MEMORANDUM OPINION** |
| OFFICER BRIAN MCCOWAN, *et al.*, | ) By: Hon. Thomas T. Cullen |
| Defendants. | ) United States District Judge |

Plaintiff Gary Wall, proceeding *pro se*, filed a civil-rights action asserting claims under 42 U.S.C. § 1983 against eight corrections officers at Red Onion State Prison ("ROSP"). (*See* Am. Compl. [ECF No. 27].) Defendants Sgt. D. Williams, Sgt. James Jones, Sgt. Cody Taylor, Lt. Jordan Fleming, Officer Tyler Fuller, Officer Alfred Yates, and Officer Jonathan Lester (collectively, the "Moving Defendants") have jointly moved for summary judgment on Plaintiff's claims against them. (Defs.' Mot. for Summ. J. [ECF No. 49].) For the following reasons, the court will deny Defendants' motion.

I.

Plaintiff's claims stem from allegations that, on February 11, 2021, he engaged in a "brief tussle" with a nonparty correctional officer in the B-5 pod at ROSP. (Am. Compl. ¶ 14.) Officer McCowan, a canine handler at ROSP, responded to the incident and allowed a canine to bite Plaintiff's leg, even though he had "surrender[ed]" and was lying in a "non-threatening position" on the pod floor. (*Id.*) Other correctional officers arrived on the scene, including Defendants Williams, Jones, Taylor, Fleming, Fuller, Yates, and Lester. (*See id.* ¶¶ 14–15.) Taylor or Fleming instructed one of the other officers to retrieve a camera, leg irons, and five-

point restraints. (*Id.* ¶ 15.) Plaintiff claims that while he was kneeling against the wall, Fuller and Yates cursed at him and one of them intentionally pulled his hair while other officers watched. (*Id.*) An officer subsequently arrived with leg irons and a camera. (*Id.* ¶ 16.) Plaintiff alleges that the leg irons were applied "as tight as they could go," and he was "ordered to stand up and walk." (*Id.*) After Plaintiff and the group of officers exited the building, he was "slammed headfirst into a puddle of muddy water on the sidewalk without warning, causing injury to the right side of [his] face above [his] eye." (*Id.*) The officers then dragged Plaintiff down a walkway and ordered him to walk again. (*Id.* ¶ 17.)

Plaintiff further alleges that as he attempted to comply with the officers' instructions, Williams asked whether the camera was turned on, and he was "given a 'no.'" (*Id.*) Upon learning that the camera held by Lester was not recording them, Williams punched Plaintiff in the face three times while he was "fully restrained and compliant." (*Id.*) Plaintiff was taken to the medical department, where he was eventually placed in five-point restraints. (*Id.*) He remained in the restraints for approximately 12 hours. (*Id.*) Several officers submitted internal incident reports advising that Plaintiff had been placed in five-point restraints. (*See* Am. Compl. Exs. 6(a)–6(f).) None of the incident reports mentioned that Plaintiff had been physically assaulted by officers prior to entering the medical department. (*See id.*)

Based on his allegations, Plaintiff raised the following claims:

**Claim 1(a):** Defendants McCowan, Fuller, Yates, and Williams used excessive force against Wall in violation of the Eighth Amendment by: (1) having a canine to bite his leg; (2) slamming him headfirst onto the ground; (3) punching him in the face; and (4) placing him in five-point restraints for multiple hours.

**Claim 1(b):** Defendants Taylor, Fleming, Jones, and Lester violated the Eighth Amendment by failing to intervene to prevent the use of excessive force by other officers.

> **Claim 2:** Defendants McCowan, Fuller, Yates, and Williams committed assault and battery under state law by: (1) having a canine bite Wall's leg; (2) pulling his hair; (3) slamming him headfirst to the ground; and (4) punching him in the face.
>
> **Claim 3:** Defendants engaged in willful and wanton negligence in violation of state law by: (1) failing to use only the amount of force reasonably necessary to restrain Wall and transport him to the medical department; (2) failing to take actions to prevent the misuse of force, such as recording Wall being taken to the medical department; and (3) failing to report "any misuse of force or assault and battery while en route to medical."

(*Id.* ¶¶ 23–26.)

The Moving Defendants filed a partial motion to dismiss seeking dismissal of Claim 1(a) and Claim 3. (*See* Defs.' Partial Mot. to Dismiss [ECF No. 37].) The court granted the motion in part and dismissed Plaintiff's Eighth Amendment excessive-force claims against Fuller and Yates based on the use of five-point restraints and any claim of willful and wanton negligence against the Moving Defendants based on their failure to report the incidents of abuse that allegedly occurred before Plaintiff arrived in the medical department. (*See* Order, August 29, 2024 [ECF No.42].)

The Moving Defendants now seek summary judgment on the remaining claims against them under Federal Rule of Civil Procedure 56 on the grounds that Plaintiff failed to properly exhaust his administrative remedies before filing this action. (*See* Memo. in Supp. of Defs.' Mot. for Summ. J. 9–12 [ECF 50].) In support of their motion, they offer the following evidence concerning the administrative exhaustion procedures at ROSP and Plaintiff's exhaustion efforts.

The Virginia Department of Corrections ("VDOC") Operating Procedure ("OP") § 866.1, "Offender Grievance Procedure," sets forth the procedure used to resolve inmate

complaints, appeal administrative decisions, and challenge the substance of prison procedures. (*See* Aff. of C. Meade ¶¶ 4–9 & Encl. A [ECF No. 50-1]). Before an inmate may submit a formal grievance, OP 866.1 requires him to demonstrate that he has made a good-faith effort to resolve his complaint informally. (*Id.* ¶ 6.) He may do so by submitting a Written Complaint form to the appropriate department head. (*Id.*) Prison staff are to provide a written response on the complaint form within 15 days of its filing. (*Id.*) If the inmate is dissatisfied with the response, he can submit a Regular Grievance on the issue within 30 days of the event about which he is complaining. (*Id.*) To effectively do so, he must attach the any required documentation from his attempt to resolve the issue to the Regular Grievance. (*Id.*)

A Regular Grievance that does not meet the filing requirements will be returned to the inmate within two business days of its receipt and will include the reason for the rejection and instructions on how to correct and resubmit the form, where feasible. (*Id.* ¶ 7.) If the inmate desires a review of the intake decision, he may send the returned grievance form to the Regional Ombudsman. (*Id.*) Pursuing an intake appeal of a rejected grievance, alone, does not constitute complete administrative exhaustion, but is merely a step toward exhaustion. (*Id.*)

If Regular Grievance is accepted for intake, there are three levels of review available. (*Id.* ¶ 8.) Level I reviews are performed by the Warden or Superintendent of the facility housing the inmate, and Level I responses are to be issued within 30 days. (*Id.*) An inmate who is not satisfied with the outcome of his Level I review may appeal that decision to Level II. (*Id.*) Level II reviews are conducted by either the Regional Administrator, the Health Services Director, the Chief of Operations for Classification and Records, or the Superintendent for Education, and those responses must be issued within 20 days. (*Id.*) Level II is the highest

level of appeal for most issues. (*Id.*) For the limited issues subject to Level III appeal, the Chief of Corrections or Director of the VDOC will conduct a final level of review within 20 days. (*Id.*) If the period for a response expires before any response is issued, the plaintiff may appeal to the next level. (*Id.*) Grievances must be appealed through all levels of available review to satisfy the exhaustion requirement prior to filing suit. (*Id.* ¶¶ 6, 10.)

Defendants offer evidence showing that, on February 28, 2021, Plaintiff submitted an Informal Complaint in which he stated:

> I'm writing to request "specific video footage" saved for future litigation purposes. After I was attacked without provocation by C/O E. Walters; by a Canine Unit while laying on my stomach and repeatedly assaulted while being called a "nigger," by R.O.S.P. staff while en route to Medical from B-Building on 2/11/2021, then strapped down for approx. 12 hours[.]

(*Id.* ¶ 12 & Encl. B (also listing the specific cameras and times from which he sought footage).) The complaint was received by ROSP's grievance department on March 10, 2021, and Lt. Stanley responded to the complaint on March 11, 2021, indicating that the videos he requested "have been saved." (*Id.*)

Plaintiff submitted a Regular Grievance on March 23, 2021, repeating what he had written in his informal complaint. (*Id.* ¶ 13 & Encl. C.) On March 29, 2021, Institutional Ombudsman C. Meade rejected Plaintiff's grievance at intake, deeming it a "Request for Services" and noting that, "[p]er Lt. Stanley in Intel[,] all video has been saved." (*Id.*) Plaintiff appealed the intake decision to the Regional Ombudsman. (*Id.* ¶ 14 & Encl. C.) On May 5, 2021, Regional Ombudsman K. Paderick upheld the Level I intake decision and returned the rejected grievance to Plaintiff. (*Id.*)

On May 19, 2021, after receiving Paderick's rejection, Plaintiff submitted another Regular Grievance in which he stated:

> After receiving the Regional Ombudsman's May 5th, 2021, Decision to uphold the initial grievances process because it was a "Request for Services" on May 14th, 2021, I am re-submitting this grievance for process as follows:
>
> On 2/11/21, I was assaulted without provocation by C/O E. Walters after being summoned to the vestibule area of Bravo 4, 5, & 6 side then attacked by a canine unit while laying on my stomach and repeatedly assaulted while being called a "nigger," by R.O.S.P. Staff while en route to medical from Bravo Building at approximately 7:40 pm, then strapped down in five point restraints for approximately 12 hours. Attached is the necessary Informal Complaint #00441, for process and to exhaust all available remedies concerning this attack/assault in accordance with Operating Procedure 866.1.

(*Id.* ¶ 15 & Encl. D.) On May 25, 2021, Institutional Ombudsman Meade rejected Plaintiff's grievance at intake because it was not made within the 30 days of the event he complained about. (*Id.*) Plaintiff appealed the May 25, 2021 intake decision to the Regional Ombudsman. (*Id.* ¶ 16 & Encl. D.) On June 2, 2021, Regional Ombudsman R. Bivens upheld the Level I intake decision and returned the grievance to Plaintiff. (*Id.*)

Plaintiff filed an affidavit in support of his response to the Moving Defendants' motion for summary judgment. (*See* Pl.'s Resp. in Opp'n to Defs.' Mot. for Summ. J. 3–5 [ECF No. 54].) In his affidavit, Plaintiff avers that he was not housed at ROSP during his attempts to utilize the "available" grievance procedures. (*Id.* at 3.) He declares that, on February 12, 2021, he was transferred to Wallens Ridge State Prison ("WRSP") where he was housed in the medical department for injuries sustained during the February 11, 2021 incident at ROSP. (*Id.*) He represents that, on several occasions, WRSP staff refused to give him the necessary

- 6 -

forms—including informal complaint forms and grievances—because Plaintiff had "assaulted a fellow officer at Red Onion." (*Id.*) Plaintiff avers he was therefore forced to wait until February 16, 2021, when he obtained a pen and could send request forms to the grievance coordinator. (*Id.*) He then had to wait several days to receive the correct forms via institutional mail rather than receiving them in person. (*Id.*) Plaintiff states that the WRSP staff deliberately hindered his access to the available grievance procedures. (*Id.*)

Plaintiff adds that the Defendants deliberately hindered his access to available administrative remedies while he was in the WRSP medical department. (*Id.* at 4.) He represents that his informal complaint dated February 28, 2021, was "clearly received" by ROSP on March 16, 2021, and "date stamped" so as to be in compliance with OP § 866.1(III)(C)(2). (*Id.*) This, Plaintiff claims, forced him to initiate the grievance process outside of the 30-day window through "no fault of his own" because he had to wait several days to receive his response due to his transfer to WRSP. (*Id.*)

Plaintiff further declares that, on February 16, 2021, WRSP Counselor Miles informed him that he needed to request that relevant video footage be saved in a grievance per a new policy. (*Id.* at 3.) Plaintiff declares that, if he had not been instructed to request that video footage be saved in his grievance by WRSP staff, he would have simply referenced the request for video preservation as in prior grievances. (*Id.*)

He avers that his first grievance was only denied as a request for service because he had followed the specific instructions he received from WRSP staff to request that video evidence be saved. (*Id.* at 4.) He declares that when his grievance was returned without any instructions for resubmission, he timely appealed the intake decision. (*Id.*) Plaintiff states that he received

the denial of his intake appeal via institutional mail on May 14, 2021, and submitted a new grievance without the request that video footage be saved just five days later. (*Id.*) He further declares that any additional efforts to exhaust would have been futile since he was outside of the 30-day timeframe by the time he had fully appealed the intake decision. (*Id.* at 5.)

The Moving Defendants' motion for summary judgment on exhaustion grounds is now ripe for review.

## II.

Summary judgment under Rule 56 "allows a case to be resolved before and without a trial when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law." *Duke Energy Carolinas, LLC v. NTE Carolinas II, LLC*, 111 F.4th 337, 352 (4th Cir. 2024) (citing Fed. R. Civ. P. 56(a)). "The court's role in ruling on such a motion is not to assess the truth of any fact alleged or to weigh facts, as would a jury in finding facts, but only to determine whether facts are disputed *and* whether the disputed facts are material." *Id.* (citations omitted).

In deciding a motion for summary judgment, "the court construes all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party." *Tekmen v. Reliance Standard Life Ins. Co.*, 55 F.4th 951, 958 (4th Cir. 2022). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). And "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt

that version of the facts for purposes of ruling on a motion for summary judgment." *Smith v. Ozmint*, 578 F.3d 246, 254 (4th Cir. 2009) (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate if there are genuine disputes of material fact and "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *id.*, but is appropriate "when the evidence is so one-sided that one party must prevail as a matter of law." *Tekmen*, 55 F.4th at 959.

### III.

The Moving Defendants argue that Plaintiff's claims against them for failure to exhaust administrative remedies. (*See* Defs.' Memo. in Supp. of Mot. for Summ. J. 9–11 [ECF No. 50].)

The Prison Litigation Reform Act of 1995 ("PLRA") requires inmates to exhaust all available remedies before filing lawsuits challenging prison conditions. *Ramirez v. Collier*, 595 U.S. 411, 421 (2022). This requirement "gives a prison a full 'opportunity to correct its own mistakes' before federal litigation is launched." *Moss v. Harwood*, 19 F.4th 614, 621 (4th Cir. 2021) (quoting *Woodford v. Ngo*, 548 U.S. 81, 89 (2006)). To adequately exhaust administrative remedies in accordance with the PLRA, "prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'" defined by the prison grievance process. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford*, 548 U.S. at 88). "And given the PLRA's 'mandatory language,' there is no room to excuse a failure to exhaust all available remedies, even to take into account 'special circumstances' that might otherwise justify noncompliance with procedural requirements." *Moss*, 19 F.4th at 621 (quoting *Ross v. Blake*,

578 U.S. 632, 642 (2016)) Failure to exhaust is an affirmative defense under the PLRA. *Jones*, 549 U.S. at 216.

"[T]he only exception to the PLRA's exhaustion requirement is when an administrative remedy is not 'available.'" *Williams v. Carvajal*, 63 F.4th 279, 285 (4th Cir. 2023) (citing *Ross*, 578 U.S. at 642). An administrative remedy is unavailable, and thus the PLRA does not require exhaustion, if the would-be remedy is "officially on the books" but is not "capable of use to obtain relief." *Moss*, 19 F.4th at 621 (quoting *Ross*, 578 U.S. at 643). A prisoner may demonstrate that an administrative remedy is "unavailable" by showing that (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates" (e.g., "if administrative officials have apparent authority, but decline ever to exercise it"), (2) it is "so opaque that it becomes, practically speaking, incapable of use" (e.g., where "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it"), or (3) "the prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation" (e.g., where "officials misl[ead] or threate[n] individual inmates so as to prevent their use of otherwise proper procedures"). *Ross*, 578 U.S. at 643–44.

Here, it is undisputed that Plaintiff did not file a Regular Grievance grieving the February 11, 2021 assault—and not merely his request that video footage be saved—until after 30 days from the date of the assault. The only issue is whether Plaintiff has demonstrated that administrative remedies were "unavailable" to him after he was transferred to WRSP.

The court reads Plaintiff's response as advancing two arguments in favor of "unavailability": (a) Plaintiff could not have filed an acceptable grievance within the 30-day

- 10 -

time frame because of the delay caused by his transfer to WRSP and the hindering actions of WRSP and ROSP staff; and (b) Plaintiff was prevented from filing an acceptable grievance because of the advice he received from WRSP staff telling him to file a grievance requesting that relevant video footage be saved. The court finds that issues of material fact concerning Plaintiff's first argument preclude summary judgment.

To comply with the 30-day filing requirement, Plaintiff was required to submit his grievance no later than March 13, 2021. Plaintiff has offered sworn statements that he made diligent and reasonable efforts to obtain an informal complaint form as soon as possible upon being transferred to WRSP. He avers that his requests that forms be hand-delivered to him in the medical department at WRSP were refused. And he attests that he did not receive a pen until February 16, 2021, and that, after receiving the pen, had to write to the grievance coordinator and wait several days to receive the necessary forms via institutional mail.

Plaintiff did not ultimately fill out his complaint form until February 28, 2021. Nothing in the record suggests that Plaintiff intentionally delayed completing or submitting his Informal Complaint once he had received the proper form in the mail. The complaint then had to be mailed to ROSP. In the written response portion of Plaintiff's complaint, ROSP Lt. Stanley indicates that the complaint was not received by the ROSP grievance department until March 10, 2021, and Stanley did not respond until March 11, 2021. The response then had to be mailed back to Plaintiff before he could file a grievance that attached his Informal Complaint. As Plaintiff points out, the Informal Complaint form contains a stamp noting that it was "RECEIVED" in the "Grievance Dept." on March 16, 2021. (*See* Aff. of C. Meade Encl. B.) Plaintiff urges that this stamp means that Lt. Stanley lied in saying that he received

- 11 -

the complaint on March 10, 2021, and responded to it on March 11, 2021. But a factfinder could also reasonably interpret the stamp as indicating that the responded-to complaint was not received back at WRSP until March 16, 2021. Either way, a reasonable jury could conclude that Plaintiff could not possibly have filed a grievance attaching his Informal Complaint—as required by OP 866.1—until after his March 13, 2021 deadline for filing a grievance had expired. Accordingly, even assuming Plaintiff had grieved only the assault and omitted any request for video evidence, a reasonable jury could find that his transfer and the delays caused by prison staff prevented Plaintiff from being able to meaningfully access the grievance procedures, because any grievance he filed would have been untimely.

It is worth noting that the ROSP grievance department did not reject his first grievance at intake based on its untimeliness, but only based on its characterization as a "request for services." (*See* Aff. of C. Meade Encl. C (response form allowing responder to check one or more reasons for the rejection).) It is therefore arguable that the ROSP grievance department afforded Plaintiff some sort of "grace" on his filing deadline. But nothing in the record conclusively establishes that, had Plaintiff complained and subsequently grieved only about the assault and subsequent actions of Defendants, his grievance would have been accepted at intake even if it were received outside of the 30-day window. This is a question of fact that must be left for the jury.

Plaintiff can establish that administrative remedies were unavailable to him by demonstrating that prison administrators thwarted his efforts to use the grievance process through "machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643–44. Because the court finds that there are material factual disputes concerning whether Plaintiff's

circumstances and the actions of prison staff precluded him from complying with the 30-day filing requirement, the Moving Defendants are not entitled to summary judgment.

## IV.

For the reasons set forth above, the court will deny Defendants' motion for summary judgment.

The Clerk is directed to send a copy of this Memorandum Opinion and the accompanying Order to the parties.

**ENTERED** this 29th day of September, 2025.

> */s/ Thomas T. Cullen*
> HON. THOMAS T. CULLEN
> UNITED STATES DISTRICT JUDGE